76839. DeSOTO FALLS, INC. et al. v. BROWN et al.
(371 SE2d 462)

BANKE, Presiding Judge.

The claimant in this workers' compensation case sustained a compensable injury to his back on November 28, 1983, while attempting to stop the fall of an 800-pound rack during the course of his employment as a spinning frame operator for DeSoto Falls, Inc. He was subsequently paid disability benefits by DeSoto Falls and was given a "light duty" job assignment as a quality control inspector. He continued to work for DeSoto Falls in that capacity for approximately the next two years, although he continued to experience back pain. On April 29, 1986, he secured the services of an attorney and requested a change-in-condition hearing. On or about June 23, 1986, before such a hearing could be held, the plant where the claimant worked was purchased from DeSoto Falls by Douglasville Spinners, Inc. For several weeks following this change in ownership, the claimant continued working at the plant as a quality control inspector. However, on July 20, 1986, Douglasville Spinners increased the length of the work shifts from eight hours to twelve hours, and the claimant was thereafter unable to work an entire shift due to his back injury. Douglasville Spinners consequently terminated his employment on July 30, 1986.

The board determined that the claimant had suffered a change in condition as of the date of his termination and ordered DeSoto Falls both to begin paying him income benefits as of that date and to compensate him for certain time he had lost from work prior to the sale of

the plant to Douglasville Spinners. In addition, DeSoto Falls was ordered to pay the claimant's attorney fees. We granted a discretionary appeal from an order of the superior court affirming this award in order to address the contention of DeSoto Falls and its insurance carrier that, pursuant to this court's decisions in *Beers Constr. Co. v. Stephens*, 162 Ga. App. 87 (2) (290 SE2d 181) (1982), and *Certain v. U. S. Fidelity &c. Co.*, 153 Ga. App. 571 (266 SE2d 263) (1980), the board should have treated the claimant's current disability as the product of a fictitious "new accident" attributable to his employment with Douglasville Spinners, rather than as the product of a change in condition attributable to his original injury. *Held*:

1. Although the claimant in *Certain* had been assigned "light work duties" by his original employer subsequent to his initial injury, he later went to work for a new employer performing "the same type strenuous work which he had been medically forbidden to do at the first employer's, and from which he had been relieved to perform light work duties." Id. 153 Ga. App. at 572. After five months in the new job, his condition deteriorated to the point that he became totally disabled. This court held that because of the "new circumstances" which characterized his work for the new employer, the claimant's disability must be considered the product of a "new accident" rather than a change in condition.

The claimant in *Beers* had returned to normal work duties with the original employer after suffering a back injury but had been laid off several months later. He subsequently found another job which required him to work exceedingly long hours at tasks involving repeated bending and lifting. After seven months in the new job, he was no longer able to work, again due to a back injury. However, the administrative law judge determined that this new injury was "in a different area of the spine from the previous injuries." This court reversed an award against the first employer, holding that the claimant's disability must be presumed, under such circumstances, to be the product of a "new accident" arising from his work with the new employer rather than the product of a change-in-condition attributable to his original injury. See generally *Central State Hosp. v. James*, 147 Ga. App. 308 (248 SE2d 678) (1978); *Hartford Accident &c. Co. v. Troglin*, 148 Ga. App. 715 (252 SE2d 213) (1979).

The case before us is distinguishable from *Certain* and *Beers* in that the condition of the claimant in the present case never stabilized following his initial back injury but continued to worsen to the point where, some two months *prior* to the sale of the plant to the new owner, he had already requested a change-in-condition hearing. While it is true that the immediate reason for the termination of his employment by the new owner was his inability to complete the extended, 12-hour work shifts which the new employer had imple-

mented, that inability obviously was not *caused* by the work which he had been performing for the new owner, which was identical to the work he had been performing for DeSoto Falls prior to the sale of the plant, for it was shown he was never able to complete an entire shift after the change went into effect. It can hardly be inferred under such circumstances that the lengthening of the work shifts precipitated the physical condition which resulted in his disability. We conclude that the evidence in the present case "clearly and undisputedly shows that the claimant's condition was not affected by . . . more strenuous, aggravating, supra normal work at the second employer but was undisputedly related only to the previous injury," *Beers*, supra, 162 Ga. App. at 91, with the result that the board was authorized to award benefits based on a change in condition rather than on the basis of a "new accident."

2. The board also was authorized to assess attorney fees against DeSoto Falls and its insurer pursuant to OCGA § 34-9-108 (b) (1) for defending the claim "in whole or in part without reasonable grounds. . . ." The claimant testified that upon his return to work for DeSoto Falls following his original back injury, he was notified that the rental expenses of a "TENS" unit and a traction apparatus which he had been using to relieve his back pain would no longer be covered by worker's compensation insurance, with the result that he was forced to discontinue using these devices. He further testified that when he inquired about seeing another doctor to get relief from his pain, he was told that he could not see any more doctors. Based on this evidence and on the fact that the claimant had already requested a change-in-condition hearing prior to the sale of the plant to Douglasville Spinners, the reasonableness of the appellants' efforts to avoid liability on the claim was certainly called into question.

We reject the appellants' contention that reasonable grounds for defending the claim were established as a matter of law by the report of an orthopedic specialist who, upon examining the claimant at the request of the appellants' counsel approximately a month after the termination of his employment, found "no objective medical basis which would prohibit [the claimant's] return to normal work activities *based on my physical exam and radiographic exam.*" (Emphasis supplied.) It is apparent that this report did not take into account the results of a "CT scan" which had been performed on the claimant some two years earlier and had revealed the bulging of disc material at multiple locations in his spine. In the context of all the medical evidence in the case and of the claimant's testimony regarding the extent and nature of his pain and the efforts he had made to obtain relief from it without ceasing work, the board was authorized to find that the appellants had failed to put forth a reasonable defense to the claim. See generally *American Motorist Ins. Co. v. Corbett*, 144 Ga.

App. 845, 847 (242 SE2d 748) (1978).
    *Judgment affirmed. Birdsong, C. J., and Beasley, J., concur.*

DECIDED JULY 14, 1988.

*Daniel C. Kniffen*, for appellants.
*Charles T. Bass, H. Durance Lowendick, Susan V. Sommers*, for appellees.